The final case to be argued this morning is Securities and Exchange Commission v. O'Brien. Mr. Hanamirian, we're not hearing you. Oh, I'm sorry. I had to dial in. It's my audio. I apologize. So may I please the court, I'm John Hanamirian on behalf of the appellant. Your Honor, the issue is, in this case, is whether the district court erred in concluding that as a matter of law, the existence of the proffer agreement between appellant and appellee entered into in response to the issuance of a subpoena precludes appellee SEC from issuing a second identical subpoena seeking the same testimony in the same proceeding. And we don't dispute the authority of the commission to issue a subpoena, but rather assert that the issuance of the May 2019 subpoena in the context of the existence of the May 2018 subpoena and the proffer agreement was an act of bad faith breach of the proffer agreement itself. The district court, interesting, characterized the argument that we're saying that the commission used the proffer session as a fishing expedition in which the commission lures the unsuspecting interviewee into divulging incriminating information under a false promise of immunity, only to then compel them to repeat the incriminating information at a later date without the protection of any such immunity. I agree with that. The district court said that they didn't... Wasn't the problem the agreement you made? I mean, yeah, it does smell a bit, but wasn't what you agreed to something that allowed them to do that? I don't believe so, Judge. I just don't see how... The agreement itself provides that. I mean, the quid pro quo or the bargain for exchange is that we're going to provide otherwise constitutionally protected testimony in either oral or written form, and that the government obtains that testimony, which it may not otherwise obtain. Right, and to the extent that your client makes the statement within the four walls of the meeting, the proffer meeting, it can't be used against him. But now the question is whether he can be asked the question separate and apart from that. Agreed. And that... The terms of the agreement seem to suggest that, yes, he can, because it was only within those four walls that his statements were protected. Well, I think, Your Honor, and I agree with you that the agreement does say that, okay, this is what's happening today. What happens in the context of the proffer, though, both before and after, is that before the proffer agreement was executed, there was an exchange or there was... We provided documents or extensive documents to the SEC in an effort to accommodate the fact that we were providing literally six or ten banker boxes of documents, both in hard copy and electronic format. I'm not sure what the import of that is, because the agreement does have an integration clause, so what is the import of whatever happened outside? Well, I guess I wonder... I understand the argument with respect to the integration clause, but I think that if it's their agreement, that it should be construed, obviously, against the drafter. We don't have a negotiation, but... What? There's an... An ambiguity would be construed against them. But where there is an integration clause, how do we just ignore it? Well, I don't know that the integration clause, and I mean it respectfully, but I don't know that it matters in the context of what's taken place, because, I mean, if we looked at this and said, as the district court did, and said, well, would there be an issue if the day after the proffer session... Was there anything in the proffer agreement that prohibited the SEC from subpoenaing Mr. O'Brien again? Well, I mean, the difficulty for us is, obviously, it's the same subpoena, same testimony. And so the proffer agreement itself comes as a consequence or as a result of the subpoena. That's not answering Judge Chin's question. Was there anything in the proffer agreement that kept the SEC from going back and doing and asking more questions? Well, I think that, again, I think it's a breach of the proffer agreement in the context of its bad faith. What is being breached? What language in the proffer agreement is being breached? That's the question. If you're not identifying anything that prohibited the SEC from serving a second subpoena, then how is there a breach? If they ask us for the same testimony in the same proceeding in the same context, that's what we provided in the agreement that they said they're not going to use. Isn't your client in the same position within the subpoenaed context that he would have been if there were no proffer session? Namely, he can invoke his Fifth Amendment right. He can invoke any other privilege, attorney, client, whatever, that would apply. And so he is basically in the same position in the subpoenaed context as if there had never been a proffer session. Or am I missing something? Well, it's not that you're missing something, Your Honor, it's just a different thought. And that is that we provided the testimony already, so they can't unhear it. And they also, they provided testimony or they provided statements that they used the testimony to pursue further leads and to do other things with respect to the case. But the proffer agreement expressly says that they can use what was said there to look for other things. Right. Well, that's the problem. That you're now saying they used that, and so they had something to go on. And so they were in a better situation than they would have been before a proffer. But that use of what came out of a proffer, where you can't use it, what was said there directly, was one of the things that the proffer agreement seemed to say could happen, expressly. Well, I mean, when you say it expressly, I think that the proffer agreement language says that they won't use the testimony except to obtain other evidence and that kind of thing. Except to obtain other evidence, which is saying I can use what I got there to do something more. So if your argument is that they're in a better situation than they were before the proffer agreement because there now is something that they can use to get better evidence on or more evidence, that's expressly what the proffer agreement says can happen. I think, Judge Calabresi, I think that that's the case, that you can interpret it that way. I also think that that language is there to assure that the person offering the testimony provides all of the information. So what they're saying is that if we discover, if we get from your testimony other information that's problematic for you, then we can use it against you. I think that's the point of it, because it's the exception to the obligation on their part not to use the testimony. And so we then left with a Fifth Amendment. We had the Fifth Amendment before we entered into the agreement. Now we have a Fifth Amendment where we've already provided all of the information to the United States. That's not, there can't be a bargain for exchange in that regard. We can't be left in a worse position after having executed an agreement than when we started. I mean, everybody would be in that posture. You've saved some time for rebuttal. We'll hear from the S.E.C. Thank you, Your Honors. May it please the Court, Eric Riker on behalf of the Securities and Exchange Commission. The Commission has the statutory power in its discretion to investigate and issue subpoenas to determine whether someone has violated the federal securities laws. The proffer agreement between O'Brien and the Commission in no way alters this fundamental framework or limits the Commission's ability to subpoena him for testimony. The district court order enforcing the subpoena was correct and certainly not an abuse of discretion. I want to focus on the terms of the proffer itself and discuss the provisions of the agreement that show the district court was correct. Reprovision are particularly important. First, the Commission may use proffer statements to obtain other evidence which may be used against O'Brien. Second, only statements made at the proffer session on August 21st, 2018 are covered by the agreement. And third, the agreement has an integration clause. And as O'Brien concedes on the top of page 15 of his brief, and I believe he did this morning, there is no provision in the agreement that says the Commission will not subpoena him for testimony or that requires the Commission to offer. There is something, I don't know if fishy is the right word or troubling, with having him come in under this agreement, which makes certain promises, he spills his heart out and then you serve him bang with another subpoena. Well, respectfully, Your Honor, I don't think there's anything fishy and I don't believe there's anything unusual. As the evidence we presented when the district court asked the question, this is quite common and it is. It may be common, but it still smells of it. Well, but we were quite forthright with him. If you look at Appendix 49, we said, one, with respect to documents, regardless of the proffer, you still have an obligation to produce documents. And two, we explicitly said that we would revisit the question of his testimony. We said that when, you know, if we do go forward with the proffer, we likely would push off the testimony, but we would revisit that once we had a date. That is a clear statement that we did still envision the distinct possibility of taking his testimony. And when a white collar, either in the civil or criminal context, an individual facing a civil or criminal context is presented with the question of whether to proffer, it is absolutely a known risk that going in and speaking to the government at an early stage may put you at a disadvantage. And there are many white collar practitioners who generally won't. Or it is at least an issue that needs to be discussed between client and counsel to weigh the risks. So help me out, what's your pitch to someone as to why they should do it, why they should proffer? Well, as the CHPARO decision from the SDNY lays out, you know, very often if someone proffers and as our enforcement manual says, it can be an opportunity to pursue a cooperation agreement, to not continue their investigation, or to focus the investigation elsewhere. Also, remember here, this was a joint proffer between the criminal and civil authorities. So different factors go into whether someone would... Yeah, but you haven't convinced me why anybody would do that. Why anybody would say, look, if you want me to come, okay, but you aren't going to ask me the things to say exactly what I'm telling you now during the proffer session. I mean, you know, it really would not make much sense for people to do that in the future. And aren't we, if we go along with you, in some ways, undercutting the likelihood of proffers being accepted? Well, I don't think so, because I think this is a known risk that, you know, for decades, people have weighed the costs and benefits of coming into proffer. Even if that were the case, that is ultimately the commission's decision to either only be willing to do proffer on these terms, or if enough individuals are not willing to proffer, then to alter the terms. Also, this is not... I take issue with the idea that this is the same testimony and the same subpoena. Obviously, similar topics will be discussed. But as was outlined in the declarations from the SEC attorneys below, there will be additional things that the SEC has a much greater understanding of the conduct, not only from the proffer, but from reviewing documents, obtaining other documents after the proffer. So many topics will be covered, not only in greater depth than before, but additional topics will be covered. And also before, with the criminal proffer, the criminal authorities were taking the lead. And while the criminal and civil authorities have similar interests, they're not the same. And in a proceeding where it is the SEC alone, the SEC will be able to pursue the areas that are of most interest to it. So again, I want to focus on the agreement because it is the agreement that allows the commission to do it. And as was discussed when Mr. O'Brien's counsel was speaking, 3A states commission may use proffer statements, quote, to obtain other evidence, which may be used against you and others. This was a clear statement saying that we could do exactly what we're doing here. And when Mr. O'Brien, in discussions with his counsel, was trying to weigh the costs and benefits of whether to proffer, he should have understood that this was part of the agreement. Moreover, to the next provision that I want to focus on, paragraph two of the agreement states, and here I quote, this agreement only covers statements provided by you during the meeting. It does not cover statements provided, including statements made at any other time, regardless of format, e.g. oral, written, or recorded. Couldn't we read that to say those same statements, even if made elsewhere, are the statements made during that, and so are covered? I mean, couldn't we read that to be ambiguous? I don't think the agreement itself is ambiguous. I think it's... I mean, if the statements become the thing, operative, so that they were made at time one, but they are the same thing, they become an object, they become objectified, then couldn't that be read to say that object cannot be used? The Supreme Court in Pillsbury expressly addressed this, and there the questions were, they had a transcript, so it was practically verbatim, and the Supreme Court said that the questions could be the same, but the answers may very well be different, and it's the answers that  If we take his testimony, even if the question is the same, and again, in many cases the question will not be the same, but even if it were, he could give the same answer, he could give a different or expanded answer. Yes, but to the extent he gives the same answer, isn't that the objectified, the object that cannot be used? I'm not saying that's a good argument, or even, you know, but isn't it enough to create an ambiguity? I don't think so, in part because there is no transcript of the earlier proceeding. It was just a proffer with one party from the U.S. Attorney's Office taking notes. So there would be no ability, even if the Commission wanted to, if there was a question they really, really liked the answer to, there would be no ability for them to, one, ask the exact same question, or two, determine whether the explicit answer given by Mr. O'Brien was the same, because at the end of the day, it would only be the answers O'Brien would give in his testimony, should he choose to testify. He again retains his right to assert the Fifth Amendment. It would only be those answers that should have been provided in summer 2019, and now if the court rules in favor of us, would be provided at some point in 2021, and those are not during the meeting, which is defined as a very specific date. And then finally, as was discussed before, the agreement has a clear integration clause. It clearly states that, you know, nothing outside the agreement is binding. To the extent that Mr. O'Brien relied on his understandings or beliefs that are separate and apart from what is in the agreement, the cases that we cite, Van Gates and many others say that, you know, whatever is in the agreement is the agreement. And even if he was so advised by counsel and it was, you know, his understanding along with his counsel that that was what the agreement provided, it's the terms of the agreement that have the obligations of the government. And unless there are any other questions, we'll submit on the brief. Thank you. Mr. Hanamirian, you have some time for rebuttal. Thank you, Your Honor. I mean, again, the term other evidence can't mean our own testimony that we just gave. And so, it can't be the meaning of the agreement to say that we're not going to use your testimony or what you provide in the context of this agreement against you. But we may issue another subpoena, take the same testimony again, and use that against you, and that's other evidence. It's not other evidence, right? It can't mean that. So in that sense, I disagree with counsel. The fact or asserting that this is quite common, I think, has been refuted in the papers and there has been no demonstration that is even remotely quite common that this is this effort. And quite honestly, it would affect the entirety of defense bar with respect to entering into a profit agreement because nobody would do it. And so, again, there's a quid pro quo here. There's a bargain for exchange and it's not reflected in this conduct. If in fact they had issued, and the district court addressed this issue, if in fact they had issued this subpoena on August 22nd, the day after, do we have the same dialogue or is it clearer that we're in bad faith? And then as we get further and further away from it, the notion of bad faith dissipates. But I don't think that it does. It's the same concept. So, again, and I don't believe that Pillsbury is dispositive with respect to this issue. Pillsbury obviously involved different facts, grand jury underlying testimony compelled under 6002. And then you've got a subsequent civil deposition where they want to compel his testimony and he's saying, no, it's not immunized. I want to be able to take the Fifth Amendment and they let him. Very different instance. This is the same case, same proceeding, same testimony. Entirely distinguishable. I don't understand in the context of the district court's opinion how that became authoritative. I think that the pure analysis of the Lorenzo analysis of contract, breach of contract, the notions of use immunity and the citations to Plummer, I think are incorrect. Plummer says that use immunity includes derivative use immunity unless it's clear that it doesn't. And this agreement doesn't make that clear. And so, again, that's the crux of what we have. I thank you. Thank you both. The court will reserve decision.